## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

CASE NO.:_____

RURAL INTERNATIONAL BANK LIMITED (In Liquidation),
a corporation organized under the laws of the Commonwealth of The Bahamas

        Plaintiff,

vs.

Key Financial Investment Group LLC,
a dissolved Florida limited liability company;
Geofinance Limited, a Delaware corporation;
Monique Merriam, an individual; and
Bruno Junqueira, an individual;

        Defendants.
_____/

## COMPLAINT

The Plaintiff, Rural International Bank Limited (In Liquidation) ("RIBL"), sues the

Defendants, Key Financial Investment Group LLC ("Key Financial"), Geofinance Limited

("Geofinance"), Monique Merriam, and Bruno Junqueira, and alleges as follows:

1.      This is an action for damages in excess of $75,000 exclusive of attorneys' fees,

interest and costs.

### Parties and Jurisdiction

2.      Plaintiff, RIBL, is a corporation organized under the laws of the Commonwealth

of The Bahamas.  At all relevant times its principal place of business was in Nassau, Bahamas.

3.      RIBL is currently in liquidation under the laws of The Bahamas.  The Supreme

Court of The Bahamas has appointed Maria M. Ferere and Alison J. Treco as Co-Liquidators for

the purpose of winding up the company.  The Co-Liquidators have authorized and directed the filing of this action.

4.       Defendant Key Financial is a dissolved Florida limited liability company.  At times relevant to this action Key Financial maintained an office in Miami-Dade County, Florida, and Key Financial's Manager and Registered Agent were located in Miami-Dade County, Florida.

5.       Defendant Geofinance is a Delaware corporation with its principal place of business in Washington, D.C.  At times relevant to this action it conducted business in Florida by (a) its ownership of Key Financial, (b) its entering into a Stock Purchase Agreement in Florida, governed by Florida law, and (c) its submission to the Florida Secretary of State of the Articles of Dissolution of Key Financial.

6.       Defendant Monique Merriam is a United States citizen who, upon information and belief, resides in Washington, D.C.  At times relevant to this action she conducted business in Florida  (a) as the sole shareholder, officer and director of Geofinance, the sole-member of Key Financial, (b) as the manager of Key Financial, (c) her signature and submission to the Florida Secretary of State of the Articles of Dissolution of Key Financial, (d) her misuse of Key Financial to defraud RIBL as alleged below, and (e) upon information and belief, her co-ownership of a condominium unit in Miami-Dade County, Florida.

7.       Defendant Bruno Junqueira is a Brazilian citizen who resides in Miami-Dade County, Florida.

8.       This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because the action is between citizens of different states, and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

9.      Venue is proper under 28 U.S.C. § 1391(b)(2) or (3) because a substantial part of the events giving rise to the claim occurred in this district or because one or more of the Defendants are subject to the Court's personal jurisdiction.

### Common Allegations of Fact

10.     At all times Key Financial was a single-member limited liability company and was manager-managed.  From its inception on or about January 11, 2011 until August 21, 2013, the sole member and manager was Defendant Bruno Junqueira.  From June 17, 2013 until the dissolution of Key Financial on or about September 3, 2013, the sole member was Geofinance and Defendant Monique Merriam acted as manager of Key Financial although she did not legally succeed Junqueira as manager until August 21, 2013.

11.     On or about February 15, 2012, RIBL and Key Financial entered into that certain Loan Agreement pursuant to which Key Financial borrowed from RIBL the sum of €3,697,840.29 (denominated in Euros) with repayment due on or before February 5, 2014, with interest.  A true and correct copy of the February 15, 2012 Loan Agreement is attached hereto as Exhibit A.

12.     Key Financial signed and delivered to RIBL a Promissory Note dated February 15, 2012 further evidencing the loan of €3,697,840.29.  A true and correct copy of the February 15, 2012 Promissory Note is attached hereto as Exhibit B.

13.     The full amount of the loan, €3,697,840.29, was drawn down by Key Financial and paid by RIBL with a direct deposit to Key Financial's account with RIBL.

14.     RIBL owns and holds the February 15, 2012 Promissory Note.

15.     Key Financial failed to pay the February 15, 2012 Promissory Note when due.

16.     On or about June 17, 2013, RIBL and Key Financial entered into that certain

Revolving Credit Agreement pursuant to which RIBL agreed to provide Key Financial with a Credit Facility of $3,500,000 (denominated in U.S. Dollars) with repayment due on or before November 12, 2013, with interest.  A true and correct copy of the Revolving Credit Agreement is attached hereto as Exhibit C. Although structured as a revolving line of credit, the entire Credit Facility of $3,500,000 was drawn down by Key Financial and disbursed by RIBL on the date of signing, June 17, 2013, by a direct deposit to Key Financial's account with RIBL.

17.     Key Financial failed to pay the June 17, 2013 Credit Facility when due.

18.     On or about June 17, 2013, the same date as the Credit Facility of $3,500,000, RIBL and Key Financial entered into that certain Loan Agreement pursuant to which Key Financial borrowed from RIBL the sum of $5,343,483.49 (denominated in U.S. Dollars) with repayment due on or before June 12, 2014, with interest.  A true and correct copy of the June 17, 2013 Loan Agreement is attached hereto as Exhibit D.

19.     Key Financial signed and delivered to RIBL a Promissory Note dated June 17, 2013 further evidencing the loan of $5,343,483.49.  A true and correct copy of the June 17, 2013 Promissory Note is attached hereto as Exhibit E.

20.     The total amount of the loan proceeds, $5,343,483.49, was drawn down by Key Financial and paid by RIBL on the date of the loan, June 17, 2013, by a direct deposit to Key Financial's account with RIBL.

21.     Thus, on a single day, June 17, 2013, Key Financial received from RIBL a total of $8,843,483.49 in loan proceeds.

22.     RIBL owns and holds the June 17, 2013 Promissory Note.

23.     Key Financial failed to pay the June 17, 2013 Promissory Note when due.

24.     Under the terms of each of the three loan transactions. Key Financial was required

to provide designated collateral to secure the loan. The collateral for the loans were bearer notes of a company in Brazil, a letter of credit from RIBL's parent in Brazil and an assignment of receivables from a company in Brazil. All of the collateral turned out to be worthless.

25.     On the same day that Key Financial received from RIBL a total of $8,843,484 in loan proceeds, its sole member and sole manager, Defendant Bruno Junqueira, sold 100% of his ownership interest in Key Financial to Geofinance pursuant to a Stock Purchase Agreement having a date of June 17, 2013.   Pursuant to Article 8 of the Stock Purchase Agreement, "Purchaser [Geofinance] does hereby assume, or agree to assume, and acquire or take over, any liabilities or obligations of any kind or nature of the Corporation [Key Financial], direct, contingent or otherwise."   A true and correct copy of the June 17, 2013 Stock Purchase Agreement is attached hereto as Exhibit F.

26.     Geofinance subsequently confirmed and represented to RIBL that it had assumed the liabilities of Key Financial, and in numerous communications Geofinance has admitted its debt to RIBL in the approximate amount of $15 million.

27.     On June 17, 2013, Defendant Bruno Junqueira signed Articles of Amendment to Articles of Organization of Key Financial removing himself as Manager and identifying Defendant Monique Merriam as Manager.

28.      The June 17, 2013 Articles of Amendment to Articles of Organization of Key Financial did not become effective until filed with the Florida Secretary of State on August 21, 2013, pursuant to Florida Statutes § 608.411(2).

29.     At all times relevant to this action Defendant Monique Merriam was the sole shareholder and sole director of Geofinance.

30.     On September 3, 2013, while still owing RIBL approximately $13,709,841 in

principal (using the exchange rate in effect on that date for converting the February 15, 2012 Euro-denominated loan) plus interest, Key Financial filed Articles of Dissolution with the Florida Secretary of State.

31.     The Key Financial Articles of Dissolution provide that the dissolution occurred because "The Company Is Not Being Used."

32.     The Key Financial Articles of Dissolution further provide that "All debts, obligations and liabilities of the limited liability company have been paid or discharged."  That was a false statement knowingly made.

33.     The Key Financial Articles of Dissolution also provide that "[a]ll remaining property and assets have been distributed among its members in accordance with their respective rights and interest."  Defendant Geofinance was the sole member and, accordingly, the sole recipient of Key Financial's remaining assets.

34.     The Key Financial Articles of Dissolution were signed by Defendant Monique Merriam under oath.

35.     Defendant Monique Merriam was the sole manager of Key Financial at the time of its dissolution.

36.     Upon information and belief, in all three of the loan transactions described herein, Key Financial was used as a mere conduit or "straw borrower" acting on behalf of undisclosed third parties.  Key Financial and its members and managers had no intention of repaying these loans.

37.     All conditions precedent to this action have been performed or have occurred.

## COUNT I
### (Against Key Financial on February 15, 2012 Promissory Note)

38.     RIBL hereby realleges and incorporates herein by reference paragraphs 1 through 37 of this Complaint.

39.     Key Financial owes RIBL €3,697,840.29 that is due with interest since February 5, 2014 under the February 15, 2012 Promissory Note.

40.     RIBL is obligated to pay its attorneys a reasonable fee for their services.

## COUNT II
### (Against Key Financial on February 15, 2012 Loan Agreement)

41.     RIBL hereby realleges and incorporates herein by reference paragraphs 1 through 37 of this Complaint.

42.     Key Financial breached the February 15, 2012 Loan Agreement by failing to repay the loan when due on February 5, 2014.

43.     As a proximate result of Key Financial's breach, RIBL has suffered damages in the amount of €3,697,840.29 that is due with interest since February 5, 2014.

44.     RIBL is obligated to pay its attorneys a reasonable fee for their services.

## COUNT III
### (Against Key Financial on Breach of Revolving Credit Agreement)

45.     RIBL hereby realleges and incorporates herein by reference paragraphs 1 through 37 of this Complaint.

46.     Key Financial breached the June 17, 2013 Revolving Credit Agreement by failing to repay the Credit Facility of $3,500,000 when due on or before November 12, 2013.

47.     As a proximate result of Key Financial's breach, RIBL has suffered damages in the amount of $3,500,000 that is due with interest since November 12, 2013.

48.     RIBL is obligated to pay its attorneys a reasonable fee for their services.

{38143761;1}

**COUNT IV**
**(Against Key Financial on June 17, 2013 Promissory Note)**

49.     RIBL hereby realleges and incorporates herein by reference paragraphs 1 through 37 of this Complaint.

50.     Key Financial owes RIBL $5,343,483.49 that is due with interest since June 12, 2014 under the June 17, 2013 Promissory Note.

51.     RIBL is obligated to pay its attorneys a reasonable fee for their services.

**COUNT V**
**(Against Key Financial for Breach of the June 17, 2013 Loan Agreement)**

52.     RIBL hereby realleges and incorporates herein by reference paragraphs 1 through 37 of this Complaint.

53.     Key Financial breached the June 17, 2013 Loan Agreement by failing to repay the loan when due on June 12, 2014.

54.     As a proximate result of Key Financial's breach, RIBL has suffered damages in the amount of $5,343,483.49 that is due with interest since June 12, 2014.

**COUNT VI**
**(Against Geofinance Based on Its Assumption of Liabilities)**

55.     RIBL hereby realleges and incorporates herein by reference paragraphs 1 through 37 of this Complaint.

56.     At the time of the express assumption by Geofinance of the liabilities of Key Financial, Key Financial had the following liabilities owed to RIBL:

A. €3,697,840.29 that is due with interest since February 5, 2014 under the February 15, 2012 Promissory Note and under the February 15, 2012 Loan Agreement.

      B.   $3,500,000 due on or before November 12, 2013 under the June 17, 2013 Revolving Credit Agreement.

      C.   $5,343,483.49 that is due with interest since June 12, 2014 under the June 17, 2013 Promissory Note and under the June 17, 2013 Loan Agreement.

57.    Geofinance owes RIBL the total principal amounts of Key Financial's liabilities as set out above in the immediately preceding paragraph together with interest, attorneys' fees and costs.

## COUNT VII
### (Against Geofinance for Breach of Contract)

58.    RIBL hereby realleges and incorporates herein by reference paragraphs 1 through 37, 56, and 57 of this Complaint.

59.    Pursuant to paragraph 8 of the June 17, 2013 Stock Purchase Agreement, Geofinance agreed to assume the liabilities of Key Financial.

60.    It was the manifest intent of the parties to the Stock Purchase Agreement that the assumption of Key Financial's liabilities by Geofinance primarily and directly benefit RIBL.

61.    Geofinance breached paragraph 8 of the June 17, 2013 Stock Purchase Agreement by failing to pay RIBL the amounts owed by Key Financial as alleged above.

62.    As a proximate result of the breach by Defendant Geofinance, RIBL has suffered damages in the amounts set forth above.

## COUNT VIII
### (Against Monique Merriam under Florida Statutes §608.4421)

63.    RIBL hereby realleges and incorporates herein by reference paragraphs 1 through 37 of this Complaint.

64.    Florida Statutes Section 608.4421(1)-(9) established a set of procedures for a

dissolved limited liability company to follow for the disposition of known claims.  A dissolved limited liability company which does not follow those claims procedures "shall pay or make reasonable provision to pay all claims and obligations, including all contingent, conditional, or unmatured claims known to the limited liability company …."  (Emphasis supplied.)

65.     Defendant Monique Merriam failed to follow the procedures for the disposition of known claims set out in Section 608.4421.  To the contrary, she misrepresented to the state of Florida in the Articles of Dissolution that "[a]ll debts, obligations and liabilities of the limited liability company have been paid or discharged."

66.     As a proximate result of Monique Merriam's actions, RIBL has suffered damages in the amounts set forth above.

## COUNT IX
### (Against Monique Merriam under Florida Statutes §608.4228)

67.     RIBL hereby realleges and incorporates herein by reference paragraphs 1 through 37 of this Complaint.

68.     Defendant Monique Merriam breached her duty of care to Key Financial under Florida Statutes §608.4225 because her conduct, as alleged above, was grossly negligent, or reckless, or intentional, or a knowing violation of law.

69.     In addition, under Florida Statutes §608.4228, Defendant's breach of duty constituted recklessness, or was committed in bad faith, or was done with malicious purpose, or was done in a manner exhibiting wanton and willful disregard of property.

70.     As a proximate result of Defendant Monique Merriam's actions, RIBL has suffered damages in the amounts set forth above.

## COUNT X
### (Against Bruno Junqueira under Florida Statutes §608.4228)

71.     RIBL hereby realleges and incorporates herein by reference paragraphs 1 through 37 of this Complaint.

72.     Defendant Bruno Junqueira breached his duty of care to Key Financial under Florida Statutes §608.4225 because his conduct, as alleged above, was grossly negligent, or reckless, or intentional, or a knowing violation of law.

73.     In addition, under Florida Statutes §608.4228, Defendant Bruno Junqueira's breach of duty constituted recklessness, or was committed in bad faith, or was done with malicious purpose, or was done in a manner exhibiting wanton and willful disregard of property.

74.     As a proximate result of Defendant Bruno Junqueira's actions, RIBL has suffered damages in the amounts set forth above.

## COUNT XI
### (Against Bruno Junqueira as Alter Ego of Key Financial)

75.     RIBL hereby realleges and incorporates herein by reference paragraphs 1 through 37 of this Complaint.

76.     From the creation of Key Financial on or about January 11, 2011 until June 17, 2013 when he sold his interest to Defendant Geofinance, the sole member of Key Financial was Defendant Bruno Junqueira.

77.     Although he sold his membership interest in Key Financial to Geofinance on June 17, 2013, Defendant Bruno Junqueira remained the manager of Key Financial approximately another two months until August 21, 2103 when Articles of Amendment were filed with the Florida Secretary of State.

78.     Defendant Bruno Junqueira dominated and controlled Key Financial to such an

extent that the LLC's independent existence was in fact non-existent but rather was the alter ego of Junqueira.

79.    Key Financial was used by Defendant Bruno Junqueira for the fraudulent or improper purpose of obtaining the three loans from RIBL for the undisclosed purpose of enriching himself or undisclosed third parties with no present intent or financial ability to repay the loans.

80.    In addition, with respect to the two loans totaling $8,843,484 made on June 17, 2013, Defendant Bruno Junqueira used Key Financial for the improper purpose of  misleading RIBL into thinking it was lending the money to Key Financial when in fact, literally at the end of the day, it was dealing with another entity – Geofinance.

81.    The June 17, 2013 Stock Purchase Agreement pursuant to which Defendant Bruno Junqueira sold his 100% membership interest in Key Financial to Geofinance provides that "[a]s total consideration" he was to receive $5,000.  In an arms-length, legitimate business transaction $5,000 would be grossly inadequate consideration for a LLC having just received $8,843,484 in loan proceeds.  Here the stated consideration reflects the control and misuse of Key Financial by Defendant Bruno Junqueira and his knowledge that it was about to be stripped of its assets.

82.    Defendant Bruno Junqueira's fraudulent or improper use of the LLC was the proximate cause of damages suffered by RIBL.

83.    Pursuant to Florida Statutes § 608.701, a member of a LLC may be held personally liable for the liabilities or improper actions of the LLC under the same conditions and circumstances under which the corporate veil of a corporation may be pierced.

## COUNT XII
## (Against Monique Merriam as Alter Ego of Geofinance and Key Financial)

84.     RIBL hereby realleges and incorporates herein by reference paragraphs 1 through 37 of this Complaint.

85.     At all times relevant to this action, Defendant Monique Merriam was the sole shareholder and sole officer and director of Geofinance.

86.     Defendant Monique Merriam dominated and controlled Geofinance to such an extent that the corporation's independent existence was in fact non-existent but rather was the alter ego of Merriam.

87.     At all times relevant to this action Geofinance represented its offices to be located at 5335 Wisconsin Avenue, Suite 440, Washington, D.C.  That address is located within the "Chevy Chase Executive Suites," a "virtual office" that provides "virtual tenants" with certain services including the ability to rent "private day offices" as needed.  Thus, Geofinance had no actual business offices.

88.     From on or about August 21, 2013, subsequent to her corporation, Geofinance, purchasing 100% of the membership interest in Key Financial on June 17, 2013, until Key Financial was dissolved on or about September 3, 2013, the sole manager of Key Financial was Defendant Monique Merriam.

89.     Defendant Monique Merriam dominated and controlled Key Financial to such an extent that the LLC's independent existence was in fact non-existent but rather was the alter ego of Merriam.

90.     Geofinance and Key Financial were used by Defendant Monique Merriam for the fraudulent or improper purpose of obtaining the two June 17, 2013 loans from RIBL, totaling

$8,843,484,  for the undisclosed purpose of enriching herself or undisclosed third parties with no present intent or financial ability to repay the loans.

91.     The June 17, 2013 Stock Purchase Agreement pursuant to which Defendant Bruno Junqueira sold his 100% membership interest in Key Financial to Geofinance provides that "[a]s total consideration" he was to receive $5,000.  In an arms-length, legitimate business transaction $5,000 would be grossly inadequate consideration for a LLC having just received $8,843,484 in loan proceeds.  Here the stated consideration reflects the control and misuse of Geofinance and Key Financial by Defendant Monique Merriam and her knowledge that Key Financial was about to be stripped of its assets.

92.     In addition, with respect to all three loans, Defendant Monique Merriam used both Geofinance and Key Financial for the fraudulent or improper purpose of misleading both RIBL and the Florida Secretary of State by filing false Articles of Dissolution with the Department of State.

93.     As evidence of her improper use of both Geofinance and Key Financial, Merriam signed the Articles of Dissolution of Key Financial in her individual capacity as the "Member having the same percentage of membership interest necessary to approve the dissolution", notwithstanding that it was her corporation, Geofinance, and not her, that was the sole member of Key Financial.

94.     As further evidence of the lack of corporate formalities observed by Merriam in her control over both Key Financial and Geofinance, on or about June 18, 2013, the day after Geofinance purchased 100% of the membership interest in Key Financial, Merriam was the sole signatory to a "Board Resolution", purportedly as "[t]he undersigned, being the Directors of Key Financial."  However, Key Financial, being a LLC, did not have a board of directors.  Pursuant

to the original Articles of Organization, Key Financial was a manager-managed LLC, and Merriam did not become the manager until August 21, 2013, when the Articles of Amendment were filed with the Florida Secretary of State.  The June 18, 2013 "Board Resolution" purported to appoint Merriam as the authorized signatory of Key Financial.

95.     Merriam falsely represented to the Florida Secretary of State in the Articles of Dissolution of Key Financial that "[a]ll debts, obligations, and liabilities of the limited liability company have been paid or discharged."  Merriam made such misrepresentation knowing that Florida Statutes § 608.445 required certification of such payment or discharge in order to obtain dissolution.  Merriam's misrepresentation evidenced her bad intentions and misuse of Key Financial and Geofinance.

96.     Defendant Monique Merriam's fraudulent or improper use of Geofinance and Key Financial was the proximate cause of damages suffered by RIBL.

97.     Pursuant to Florida Statutes § 608.701, a member of a LLC may be held personally liable for the liabilities or improper actions of the LLC under the same conditions and circumstances under which the corporate veil of a corporation may be pierced.

## COUNT XIII
### (Against Bruno Junqueira for Fraud)

98.     RIBL hereby realleges and incorporates herein by reference paragraphs 1 through 37 of this Complaint.

99.     Defendant Bruno Junqueira, individually and as manager/member of Key Financial, signed and delivered to RIBL the February 15, 2012 Loan Agreement promising to repay €3,697,840.29, plus interest on or before February 5, 2014, but intended not to repay or had no present intent to repay.

100.     Junqueira, individually and as manager/member of Key Financial, promised in the

February 15, 2012 Loan Agreement to provide RIBL, as collateral or "guarantee" for the loan, certain bearer notes in the principal amount of 10 million Brazilian Reais, having scheduled interest payments. That collateral turned out to be worthless.

101.    Junqueira, individually and as manager/member of Key Financial, signed and delivered to RIBL the February 15, 2012 Promissory Note promising to repay €3,697,840.29, plus interest on or before February 5, 2014, but intended not to repay or had no present intent to repay.

102.    The promises made by Junqueira in the Loan Documents to repay the loans were false when made, and he knew they were false, in that he intended not to repay the loans or lacked a present intent to repay the loans.

103.    The misrepresentations and false promises made by Junqueira were made for the purpose of inducing RIBL to act in reliance by advancing large sums of money to Key Financial.

104.    As a result of the fraud by Junqueira RIBL suffered damages as set forth above.

## COUNT XIV
### (Against Monique Merriam for Fraud)

105.    RIBL hereby realleges and incorporates herein by reference paragraphs 1 through 37 of this Complaint.

106.    Defendant Monique Merriam, individually and as sole shareholder/director of Geofinance and purported manager of Key Financial, caused the June 17, 2013 "loan documents" – the Revolving Credit Agreement, the Loan Agreement, and the Promissory Note – to be signed and delivered to RIBL, but intended not to repay or had no present intent to repay.

107.    Merriam, individually and as sole shareholder/director of Geofinance and purported manager of Key Financial, caused the June 17, 2013 Revolving Credit Agreement to be signed and delivered to RIBL, promising delivery of an irrevocable Standby Letter of Credit

as collateral or "guarantee" for the total of principal plus interest of the Credit Facility. That collateral turned out to be worthless.

108.    Merriam, individually and as sole shareholder/director of Geofinance and purported manager of Key Financial, caused the June 17, 2013 Promissory Note in the original principal amount of $5,343,483.49 to be signed and delivered to RIBL promising to repay the principal plus interest on or before June 12, 2014, but intended not to repay or had no present intent to repay.

109.    Merriam, individually and as sole shareholder/director of Geofinance and purported manager of Key Financial, caused the June 17, 2013 Loan Agreement concerning a loan from RIBL in the original principal amount of $5,343,483.49 to be signed and delivered to RIBL promising to repay the principal plus interest on or before June 12, 2014, but intended not to repay or had no present intent to repay.

110.    Merriam, individually and as sole shareholder/director of Geofinance and purported manager of Key Financial, caused the June 17, 2013 Loan Agreement to be signed and delivered to RIBL, promising delivery of "securities, bonds or receivables" as collateral or "guarantee" for the total of principal plus interest on the loan, but intended not to provide such collateral or had no present intent to provide such collateral and, in fact, never provided such collateral.

111.    Less than three months after Key Financial borrowed a total of $8,843,484 from RIBL, and while still owing RIBL approximately $13,709,841 in principal (using the exchange rate in effect on that date for converting the February 15, 2012 Euro-denominated loan) plus interest, Merriam, individually and as sole shareholder/director of Geofinance and by then sole manager of Key Financial, certified to the Florida Secretary of State that "The Company is Not

Being Used" in Articles of Dissolution filed September 3, 2013.  Upon information and belief, Key Financial was similarly "not being used" for any legitimate business purpose on or about June 17, 2013 when RIBL advanced $8,843,484 in loan proceeds.  Key Financial's inactive status was a material fact that Merriam, individually and as sole shareholder/director of Geofinance and purported manager of Key Financial, hid from RIBL until after the money had been advanced by RIBL.

112.   The promises made by Merriam in the Loan Documents to repay the loans were false when made, and she knew they were false, in that she intended not to repay the loans or lacked a present intent to repay the loans.

113.   The promises made by Merriam in the loan documents to provide collateral or "guarantee" for the loans were false when made, and she knew they were false, in that she intended not to provide the collateral, lacked a present intent to provide the collateral, or knew that the collateral was worthless, a material fact, but kept that material fact hidden from RIBL.

114.   The misrepresentations and false promises made by Merriam were made for the purpose of inducing RIBL to act in reliance by advancing large sums of money to Key Financial.

115.   As a result of the fraud by Merriam RIBL suffered damages as set forth above.

**COUNT XV**
**(Against All Defendants for Conspiracy to Defraud)**

116.   RIBL hereby realleges and incorporates herein by reference paragraphs 1 through 37 of this Complaint.

117.   The Defendants, and each of them, conspired among themselves to defraud RIBL out of millions of dollars.

118.   The Defendants misled RIBL by signing and delivering various "loan" documents, knowing all the while that the "borrower," Key Financial, had no means or present

intent to repay the "loans".

119.    The Defendants took numerous overt actions in furtherance of the conspiracy to defraud, as alleged specifically below.

120.    Defendant Bruno Junqueira, individually and as manager/member of Key Financial, signed and delivered to RIBL the February 15, 2012 Loan Agreement promising to repay €3,697,840.29, plus interest on or before February 5, 2014, but intended not to repay or had no present intent to repay.

121.    Junqueira, individually and as manager/member of Key Financial, promised in the February 15, 2012 Loan Agreement to provide RIBL, as collateral or "guarantee" for the loan, certain bearer notes in the principal amount of 10 million Brazilian Reais, having scheduled interest payments. That collateral turned out to be worthless.

122.    Junqueira, individually and as manager/member of Key Financial, signed and delivered to RIBL the February 15, 2012 Promissory Note promising to repay €3,697,840.29, plus interest on or before February 5, 2014, but intended not to repay or had no present intent to repay.

123.    Defendant Monique Merriam, individually and as sole shareholder/director of Geofinance and purported manager of Key Financial, caused the June 17, 2013 "loan documents" – the Revolving Credit Agreement, the Loan Agreement, and the Promissory Note – to be signed and delivered to RIBL, but intended not to repay or had no present intent to repay.

124.    Merriam, individually and as sole shareholder/director of Geofinance and purported manager of Key Financial, caused the June 17, 2013 Revolving Credit Agreement to be signed and delivered to RIBL, promising delivery of an irrevocable Standby Letter of Credit as collateral or "guarantee" for the total of principal plus interest of the Credit Facility. That

collateral turned out to be worthless.

125.    Merriam, individually and as sole shareholder/director of Geofinance and purported manager of Key Financial, caused the June 17, 2013 Promissory Note in the original principal amount of $5,343,483.49 to be signed and delivered to RIBL promising to repay the principal plus interest on or before June 12, 2014, but intended not to repay or had no present intent to repay.

126.    Merriam, individually and as sole shareholder/director of Geofinance and purported manager of Key Financial, caused the June 17, 2013 Loan Agreement concerning a loan from RIBL in the original principal amount of $5,343,483.49 to be signed and delivered to RIBL promising to repay the principal plus interest on or before June 12, 2014, but intended not to repay or had no present intent to repay.

127.    Merriam, individually and as sole shareholder/director of Geofinance and purported manager of Key Financial, caused the June 17, 2013 Loan Agreement to be signed and delivered to RIBL, promising delivery of "securities, bonds or receivables" as collateral or "guarantee" for the total of principal plus interest on the loan, but intended not to provide such collateral or had no present intent to provide such collateral and, in fact, never provided such collateral.

128.    Less than three months after Key Financial borrowed a total of $8,843,484 from RIBL, and while still owing RIBL approximately $13,709,841 in principal (using the exchange rate in effect on that date for converting the February 15, 2012 Euro-denominated loan) plus interest, Merriam, individually and as sole shareholder/director of Geofinance and by then sole manager of Key Financial, certified to the Florida Secretary of State that "The Company is Not Being Used" in Articles of Dissolution filed September 3, 2013.  Upon information and belief,

Key Financial was similarly "not being used" for any legitimate business purpose on or about June 17, 2013 when RIBL advanced $8,843,484 in loan proceeds. Key Financial's inactive status was a material fact that Merriam, individually and as sole shareholder/director of Geofinance and purported manager of Key Financial, hid from RIBL until after the money had been advanced by RIBL.

129.   The promises made by the Defendants in the Loan Documents to repay the loans were false when made, and the Defendants knew they were false, in that the Defendants intended not to repay the loans or lacked a present intent to repay the loans.

130.   Some of the promises made by the Defendants in the loan documents to provide collateral or "guarantee" for the loans were false when made, and the Defendants knew they were false, in that the Defendants intended not to provide some of the collateral, lacked a present intent to provide such collateral, or knew that the collateral was worthless, a material fact, but kept that material fact hidden from RIBL.

131.   The misrepresentations and false promises made by the Defendants were made for the purpose of inducing RIBL to act in reliance by advancing large sums of money to Key Financial.

132.   As a result of the fraud and conspiracy by the Defendants RIBL suffered damages as set forth above.

WHEREFORE, RIBL demands judgment against the Defendants as follows:

1.   As to Count I, against Key Financial under the February 15, 2012 Promissory Note for an award of damages totaling €3,697,840.29 (converted into U.S. Dollars) together with pre-judgment interest, attorneys' fees, and costs.

2.   As to Count II, against Key Financial under the February 15, 2012 Loan

Agreement for an award of damages totaling €3,697,840.29 (converted into U.S. Dollars) of principal together with pre-judgment interest, attorneys' fees, and costs.

3. As to Count III, against Key Financial under the June 17, 2013 Revolving Credit Agreement for an amount of damages totaling $3,500,000 together with pre-judgment interest, attorneys' fees, and costs.

4. As to Count IV, against Key Financial under the June 17, 2013 Promissory Note for an amount of damages totaling $5,343,483.49 together with pre-judgment interest, attorneys' fees, and costs.

5. As to Count V, against Key Financial under the June 17, 2013 Loan Agreement for an amount of damages totaling $5,343,483.49 together with pre-judgment interest, attorneys' fees, and costs.

6. As to Count VI, against Geofinance based on its express assumption of the liabilities of Key Financial for an amount of damages totaling €3,697,840.29 of principal (converted into U.S. Dollars) and $8,843,484 together with pre-judgment interest, attorneys' fees, and costs.

7. As to Count VII, against Geofinance based on its breach of paragraph 8 of the June 17, 2013 Stock Purchase Agreement for an amount of damages totaling €3,697,840.29 of principal (converted into U.S. Dollars) and $8,843,484 together with pre-judgment interest, attorneys' fees, and costs.

8. As to Count VIII, against Monique Merriam under Florida Statutes § 608.4421 for an amount of damages totaling €3,697,840.29 (converted into U.S. Dollars) and $8,843,484 together with pre-judgment interest, attorneys' fees, and costs.

9.  As to Count IX, against Monique Merriam under Florida Statutes § 608.4228 for an amount of damages totaling €3,697,840.29 (converted into U.S. Dollars) and $8,843,484 together with pre-judgment interest, attorneys' fees, and costs.

10. As to Count X, against Bruno Junqueira under Florida Statutes § 608.4228 for an amount of damages totaling €3,697,840.29 (converted into U.S. Dollars) and $8,843,484 together with pre-judgment interest, attorneys' fees, and costs.

11. As to Count XI, against Bruno Junqueira as the alter ego of Key Financial for an amount of damages totaling €3,697,840.29 (converted into U.S. Dollars) and $8,843,484 together with pre-judgment interest, attorneys' fees, and costs.

12. As to Count XII, against Monique Merriam as the alter ego of Geofinance and Key Financial for an amount of damages totaling €3,697,840.29 (converted into U.S. Dollars) and $8,843,484 together with pre-judgment interest, attorneys' fees, and costs.

13. As to Count XIII, against Bruno Junqueira for fraud for an amount of damages totaling €3,697,840.29 (converted into U.S. Dollars) and $8,843,484 together with pre-judgment interest, attorneys' fees, and costs.

14. As to Count XIV, against Monique Merriam for fraud for an amount of damages totaling €3,697,840.29 (converted into U.S. Dollars) and $8,843,484 together with pre-judgment interest, attorneys' fees, and costs.

15. As to Count XV, against all Defendants based on their conspiracy to defraud for an amount of damages totaling €3,697,840.29 (converted into U.S. Dollars) and $8,843,484 together with pre-judgment interest, attorneys' fees, and costs.

16. As to all Counts, for such other and further relief as the Court deems appropriate.

DATED:  June 17, 2016.

Respectfully submitted,

By: s/   *James M. Miller*
     James M. Miller, Esq.
     Florida Bar Number:  201308
     Email:  james.miller@akerman.com
     Naim Surgeon, Esq.
     Florida Bar Number: 101682
     Email:  naim.surgeon@akerman.com
     **AKERMAN LLP**
     Three Brickell City Centre
     98 Southeast Seventh Street, Suite 1100
     Miami, FL  33131
     Phone:  (305) 374-5600
     Fax:  (305) 374-5095
     Attorneys *for Plaintiff, Rural International Bank*
     *Limited (In Liquidation)*