# EXHIBIT D

| LOAN AGREEMENT | CONTRATO DE MÚTUO |
|---|---|
| REF.: CO0040613 | REF.: CO0040613 |

This Loan agreement dated as of June 17th, 2013 is entered into by and between:

A) **RURAL INTERNATIONAL BANK LIMITED**, hereinafter referred to as "LENDER", a Banking Institution duly organized and validly existing in accordance with the laws of The Bahamas, domiciled at Caves Village, Unit 7, West Bay Street, Nassau, Commonwealth of The Bahamas,

and

B) **KEY FINANCIAL INVESTMENT GROUP LLC**, hereinafter referred to as "BORROWER", a company duly organized and validly existing in accordance with the laws of the State of Florida, U.S.A., domiciled at 445 Grand Bay Drive Apt.401, Key Biscayne, Florida, 33149, U.S.A., represented in this instrument in accordance with its Bye-law.

### WHEREAS

(i) The Borrower has requested to the Lender a loan in the amount of USD 5,343,483.49 (Five million, three hundred and forty three thousand, four hundred eighty three U.S. Dollars and forty nine cents);

(ii) The Lender has agreed to lend the requested amount which shall be made in accordance with the terms and conditions set forth in this Loan Agreement (the "Loan Agreement").

### NOW, THEREFORE

In consideration of the foregoing and of the mutual covenants set forth herein, Lender and Borrower, (the "Parties"), have agreed to execute this Agreement, as follows:

### SECTION 1 – DEFINITIONS

1.1 For purposes of this Loan Agreement the following terms shall have the meanings indicated, and the plural form or any term defined herein in the singular shall merely express the grammatical plural of the same term defined.

1.1.1 "Banking Day" means a day, not a Saturday, a Sunday or a Holiday, on which banks are not authorized or required to close in the cities of Nassau – Bahamas and New York, U.S.A..

---

O presente Contrato de Mútuo, datado de 17 de Junho de 2013 é celebrado entre as seguintes partes:

A) **RURAL INTERNATIONAL BANK LIMITED.**, (doravante designado como "BANCO"), instituição bancária devidamente organizada e estabelecida de acordo com as Leis das Ilhas Bahamas, com sede em Caves Village, Unidade 7, West Bay Street, Nassau, New Providence, Ilhas Bahamas.

e

B) **KEY FINANCIAL INVESTMENT GROUP LLC**, doravante designada como DEVEDOR, uma empresa devidamente constituída e validamente existente conforme as Leis do Estado da Florida, U.S.A., com sede no endereço 445 Grand Bay Drive, Apt.401, Key Biscayne, Florida, 33149, U.S.A. representada neste instrumento de acordo com seu estatuto.

### CONSIDERANDO QUE

(i) O Devedor solicitou ao Banco, um empréstimo no valor de USD 5,343,483.49 (Cinco milhões, trezentos e quarenta e três mil, quatrocentos e oitenta e três dólares norte-americanos e quarenta e nove centavos);

(ii) O BANCO aprovou, para o DEVEDOR, o empréstimo no valor acima, o qual deverá ser feito de acordo com os termos e condições descritos neste Contrato de Mútuo.

### PORTANTO

em consideração ao acima exposto, Devedor e Banco, (as "Partes"), de comum acordo, resolvem fazer o presente Contrato de Empréstimo conforme as seguintes cláusulas e condições:

### CLÁUSULA 1 - DEFINIÇÕES

1.1 Para os objetivos deste Contrato, os seguintes termos indicarão os significados de cada um, e a forma plural ou qualquer termo definido neste documento no singular expressarão simplesmente a forma gramatical no plural do termo em questão.

1.1.1 "Dia Útil" significa um dia, não Sábado, Domingo ou Feriado, no qual os Bancos não são autorizados ou obrigados a fechar nas cidades de Nassau – Bahamas e Nova York, U.S.A.

1

| | |
|---|---|
| 1.1.2 "Default" means any event that, with the giving of a Notice according to subsection 11.1 hereof, or the lapse of time, or a combination of both, would constitute an Event of default, according to subsection 9.1 hereof. | 1.1.2 "Inadimplência" significa qualquer evento que, com o envio do Aviso, conforme estipulado na subseção 11.1 deste Contrato ou do tempo decorrido ou da combinação de ambos, possa se constituir em uma falta conforme estipulado na subseção 9.1 deste instrumento. |
| 1.1.3 "Event of Default" has the meaning assigned to that term in section 9. | 1.1.3 "Eventos de Inadimplência" tem o significado definido na clausula 9 deste Contrato. |
| 1.1.4 "USD" or "US$" means the lawful money of the United States of America (USA). | 1.1.4 "USD" ou "US$" significa a moeda oficial dos Estados Unidos da América do Norte. |
| 1.1.5 "Drawdown Date" shall mean the day on which the Lender makes the disbursement of the Loan to the Borrower by crediting their account as per instructions. | 1.1.5 "Data de Desembolso" significa a data em que o Banco liberar o Empréstimo ao Devedor creditando a conta do mesmo de acordo as instruções recebidas. |
| 1.1.6 "Interest Payment Date" shall mean the dates which interest is due in accordance attached schedule (Appendix No.1). | 1.1.6 "Data de Pagamento dos Juros" significa o dia no qual os juros deverão ser pagos de acordo a tabela em anexo (Apêndice Nº 1). |
| 1.1.7 "Interest Period" shall mean the period from the Disbursement Date up to the Maturity date as per stipulated in the attached schedule (Appendix No.1). | 1.1.7 "Período de Juros" significará o período iniciado na Data de Desembolso até a data de vencimento, conforme estipulado no anexo (Apêndice Nº 1). |
| 1.1.8 "Loan" shall mean the amount advanced by the Lender to the Borrower pursuant to this Loan Agreement, and thereafter the aggregate unpaid principal amount thereof. | 1.1.8 "Empréstimo" significará o montante adiantado pelo Banco ao Devedor segundo este instrumento e, depois disso, o saldo do montante principal que permanecer impago. |
| 1.1.9 "Repayment Date" or "Repayment Dates" shall mean the day or days on which repayment installments of this Loan are due, in accordance with attached schedule (Appendix No. 1). | 1.1.9 "Data de Amortização" ou "Datas de Amortizações" significará o dia ou dias nos quais as prestações deste Empréstimo deverão ser pagas, conforme demonstrado no anexo (Apêndice Nº1). |
| 1.1.10 The headings of the sections of this Loan Agreement are inserted exclusively for convenience of reference. They shall not affect the construction of any provision of this Loan Agreement. References contained herein, or in any future amendments to this Loan Agreement to articles, sections, subsections of exhibits without further identification of the document to which reference is made are references to provisions or parts of this Loan agreement. The words "herein", "hereinafter", "hereof" and "hereunder" are used in this Loan Agreement to refer to this Loan Agreement as a whole and not to any individual article, section, subsection or part of this Loan Agreement. | 1.1.10 Os títulos das seções deste Contrato de Mútuo foram inseridos exclusivamente para a conveniência da referência e, portanto, eles não afetarão a construção de nenhuma Cláusula deste contrato. As referências contidas neste instrumento, ou em qualquer futura emenda a este, referentes a cláusulas, seções, as subseções de anexos sem a devida identificação do documento ao qual a referência é feita, serão consideradas como referências para as estipulações ou partes deste Contrato de Mútuo. As palavras "aqui", "doravante", "do presente instrumento" e "sob o presente" são usadas neste Contrato para referir-se a este Contrato de Mútuo no conjunto e não a qualquer Cláusula individual, seção, subseção ou parte deste instrumento. |

**SECTION 2 – DRAW-DOWN**

2.1 The Drawdown Date shall be on June 17th, 2013.

**SECTION 3 – CONDITIONS PRECEDENT**

3.1 The disbursement of the Loan to Borrower shall be

**CLÁUSULA 2 - DESEMBOLSO**

2.1 O Desembolso será realizado no dia 17 de Junho de 2013.

**CLÁUSULA 3 – CONDIÇÕES PARA O DESEMBOLSO**

3.1 O Desembolso do Empréstimo estará condicionado

2

subject to the following condition precedent:

(a) No Event of Default shall have occurred and be continuing.

## SECTION 4 – REPAYMENT OF PRINCIPAL

4.1 The principal amount of the Loan shall be repaid on the Repayment Dates as defined in section 1 herein above.

4.2 Borrower shall only be discharged from its obligation to repay the Loan after the entire amount of the indebtedness to the Lender (including the Loan with accrued interest thereon and applicable fees) is received by Lender in immediately available funds to the Lender's account or accounts as specified to the Borrower from time to time pursuant to Section 8.1 below.

4.3 At the request of the Borrower the Lender may, in its absolute discretion, agree to full or partial repayment of the amount borrowed prior to the repayment dates specified in accordance with Section 4.1. The Borrower must provide the Bank with a written request, no less than 03 days prior to the scheduled Repayment Date, that such early repayment be allowed.

## SECTION 5 – INTEREST

5.1 The outstanding principal amount of the Loan shall bear interest calculated at the rate of 8% (eight per cent) per annum.

5.2 Interest due by borrower shall be calculated on the basis of the actual number of days elapsed in the course of a year of 360 (three hundred and sixty) days and shall be paid on the Interest Payment Date as defined in Section 1 herein above.

## SECTION 6 – TAXES

6.1 The payment of principal, interest and commission on the Loan or the payment of any other amount due or that becomes due by the Borrower hereunder shall be made free and clear of any taxes, levies, deductions, charges and withholdings. If any Taxes are required to be withheld or deducted from any such payment, the Borrower shall pay immediately, for the account of the Lender, such additional amount as may be necessary to ensure that the net amount actually received by the Lender is equal to the amount which the Lender would have received had no Taxes been withheld or deducted form such payment.

## SECTION 7 – PAYMENTS

7.1 All payments due to the Lender shall be made by the Borrower for Lender's account or accounts specified pursuant to Section 8.1 below in immediately

---

aos seguintes requisitos:

(a) Nenhum "Evento de Inadimplência" deverá ter ocorrido e continuar vigente.

## CLÁUSULA 4 – PAGAMENTO DO PRINCIPAL

4.1 O valor Principal do Empréstimo deverá ser amortizado nas "Datas de Amortização" como determinado na cláusula 1 acima.

4.2 O Devedor só será liberado da sua obrigação de reembolsar o Empréstimo depois que o montante da obrigação (incluindo o valor principal do Empréstimo e os juros acumulados, mais as despesas devidas) seja recebido, em fundos imediatamente disponíveis na conta ou contas do Banco conforme especificado ao Devedor na clausula 8.1 abaixo.

4.3 A pedido do Devedor, o Banco, a seu exclusivo critério, poderá concordar em aceitar o pagamento total ou parcial do montante emprestado antes das datas de vencimento especificadas conforme a Seção 4.1. Para que o Banco autorize este Pagamento antecipado o Devedor deverá entregar ao Banco um pedido escrito, com, pelo menos, 03 dias antes da Data de Pagamento originalmente programada.

## CLÁUSULA 5 – JUROS

5.1 A taxa de Juros a ser cobrada sobre o montante do Principal do Empréstimo que estiver "em aberto" será de 8% a.a. (oito por cento ao ano).

5.2 Os juros devidos pelo Devedor ao Banco serão calculados levando-se em consideração os dias efetivamente decorridos, e baseado em um ano de 360 dias e serão pagos na Data de Pagamento de Juros, conforme definido na Cláusula n. 1 do presente instrumento.

## CLÁUSULA 6 – IMPOSTOS

6.1 O Pagamento do principal, juros e comissões sobre o empréstimo ou o pagamento de quaisquer outros valores que forem devidos pelo Devedor sob o presente contrato deverá ser feito livre de quaisquer deduções relativas a impostos, taxas, encargos, empréstimos compulsórios, despesas ou outras retenções. Se algum imposto vier a ser exigido ou deduzido sobre qualquer pagamento, o Devedor pagará ao Banco, imediatamente, a importância devida relativa a tal pagamento, aumentada na extensão necessária para assegurar que, depois de se fazer a dedução ou retenção, o Banco receba um valor líquido igual ao que ele receberia, caso tal dedução ou retenção não fosse exigida.

## CLÁUSULA 7 – PAGAMENTOS

7.1 Todos os pagamentos devidos pelo Devedor ao Banco serão feitos em fundos imediatamente disponíveis na conta ou contas do Banco segundo o especificado ao

3

available funds, not later than 11 a.m. local time at the place of payment.

7.2 In the event a payment hereunder is due on a non-Banking Day it shall instead fall due on the next following Banking Day, and interest shall be calculated up to and including and be due for payment on the date of actual payment.

7.3 The Borrower, by means of this instrument, authorizes the Lender to debit its account for any amount of principal, interest or any charge relating to this agreement.

### SECTION 8 – CURRENCY AND PLACE OF PAYMENT

8.1 All payments due by the Borrower shall be made in immediately available funds, in favor of the Lender, for its account, to the Lender's correspondent bank.

8.2 All payments due by the Borrower under this Loan Agreement shall be made in U.S. Dollars.

### SECTION 9 – EVENTS OF DEFAULT

9.1 If one or more of the following Events of Default (each of which shall be deemed as constituting an "Event of Default") occurs and is continuing, Lender shall be entitled to the remedies set forth in subsection 9.2.

(a) If the Borrower fails to pay within two Banking Days of the due date any amount of principal or interest on the Loan or any other amount payable by Borrower hereunder;

(b) Borrower (i) fails to perform or observe any covenant or agreement contained herein to be performed or observed by it, or (ii) fails to perform or observe any other obligation resulting from this Loan Agreement, and does not remedy the failure on or before the thirtieth day after it occurs;

(c) Borrower (i) fails to pay any of its indebtedness when such indebtedness becomes due and payable or (ii) fails to perform or observe any covenant or agreement to be performed or observed by it, contained in any other agreement or in any other instrument evidencing any of its indebtedness and, as a result of the failure, any other party to such agreement or instrument is entitled to exercise and has not irrevocably waived, the right to accelerate the maturity of any amount owing thereunder;

Devedor na clausula 8.1 abaixo, antes das 11 horas da manhã (hora do local de pagamento).

7.2 No caso de um pagamento sob o presente contrato tiver seu vencimento em um dia não útil, este passará a ser devido no primeiro dia útil imediatamente seguinte, e os juros serão calculados até e incluindo o dia em que o pagamento for efetivamente feito.

7.3 O DEVEDOR autoriza o BANCO, pelo presente, a debitar sua conta referente a qualquer amortização, seja de principal, juros ou quaisquer outros encargos relativos a este contrato.

### CLÁUSULA 8 – MOEDA E LUGAR DE PAGAMENTO

8.1 Todos os Pagamentos devidos deverão ser creditados em fundos imediatamente disponíveis na conta ou contas do Banco, junto ao seu banqueiro correspondente.

8.2 Todos os Pagamentos devidos pelo Devedor sob o presente instrumento deverão ser pagos em dólares dos Estados Unidos da América do Norte.

### CLÁUSULA 9 - EVENTOS DE INADIMPLÊNCIA

9.1 Se um ou mais dos seguintes "Eventos de Inadimplência" ocorrer e continuar vigente, o BANCO terá o direito de fazer as exigências estabelecidas na subsecção 9.2.

(a) O Devedor deixar de pagar, dentro do prazo de dois dias úteis, qualquer valor de principal ou de juros sobre o empréstimo, ou de qualquer outro valor devido pelo Devedor sob o presente instrumento;

(b) O Devedor (i) deixar de cumprir ou observar qualquer cláusula ou compromisso sob este Contrato para ser cumprido ou observado pelo Devedor, ou (ii) se deixar de fazer ou observar qualquer outra obrigação resultante deste Contrato de Mútuo, e não sanar esta falha até o trigésimo dia posterior a tal ocorrência;

(c) O DEVEDOR (i) deixar de pagar quaisquer de suas obrigações quando tais obrigações se tornarem devidas e pagáveis; ou (ii) deixar de cumprir ou observar qualquer cláusula ou compromisso a ser cumprido ou observado por ele, contido em qualquer outro Contrato ou em qualquer Instrumento evidenciando quaisquer de seus compromissos e, como consequência de tal descumprimento, qualquer terceiro em tal contrato ou instrumento tenha a possibilidade de exercer o direito e não o tenha dispensado, de forma irrevogável, de exercer o direito de exigir o pagamento antecipado de qualquer valor devido sob tal contrato.

4

(d) Borrower is dissolved, (i) fails or is unable to pay is debts generally as they become due, (ii) commences a voluntary case in bankruptcy or any other action or proceeding for any other relief under any Law affecting creditors' rights that is similar to a bankruptcy law or (iii) consents by answer or otherwise to the commencement against it of an involuntary case in bankruptcy or any other such action or proceeding; or a court enters an order for relief or a decree in an involuntary case in bankruptcy or any other such action or proceeding; or a receiver, trustee or similar official is appointed in respect of Borrower or any of their property, and that order or decree is not dismissed or stayed, or that appointment is not terminated, on or before the sixtieth day after the entry of the order or decree or after the appointment, as the case may be, or any such dismissal or stay ceases to remain in effect;

(e) any governmental authorization necessary for the performance of any obligation of Borrower under this Loan Agreement fails to become or enter or remain valid and subsisting in full force and effects.

(f) any governmental authority or court takes any action that, in the reasonable opinion of the Lender, has a materially adverse effect on the financial condition of Borrower or on the ability of Borrower to perform any of its obligations under this Loan Agreement, as the case may be, and that action is not rescinded on or before the thirtieth day after it occurs or a rescission of the action ceases to remain in effect;

(g) Borrower sells or otherwise disposes of all or a substantial part of its assets, or ceases to conduct all or a substantial part of its business as they are now conducted, or merges or consolidates with any other company without the prior written consent of the Lender, unless the entity surviving the merger or consolidation is the Borrower as the case may be.

9.2 If any Event of Default occurs and is continuing, Lender may, by notice to Borrower, (i) declare the obligations of Lender hereunder to be terminated, whereupon those obligations shall terminate, and (ii) declare all amounts payable hereunder by Borrower, that would otherwise be due after termination, to be immediately due and payable.

9.3 The rights provided for herein are cumulative and they do not exclude any other rights, powers, privileges or remedies provided by law.

**SECTION 10 – REPRESENTATIONS**

10.1 Borrower hereby makes the following representations and warranties set forth below to the

(d) O Devedor for dissolvido, (i) falhar ou se tornar incapaz de pagar as suas dívidas em seus devidos vencimentos, (ii) iniciar um processo de concordata, ou qualquer outra ação ou procedimento para obter qualquer outro benefício amparado em qualquer Lei que afete os direitos de credores e que seja semelhante a uma Lei de Falências, ou (iii) consente, por qualquer forma, para o início de um processo de falência contra ele ou qualquer outra ação ou processo similar; ou que um Tribunal inicie uma ação em seu benefício ou uma ação de pedido de concordata ou qualquer outra ação ou processo semelhante; ou um Depositário, Curador ou um funcionário semelhante seja designado para o Devedor ou em relação a quaisquer de suas propriedades e que tal nomeação não seja sustada ou interrompida até o sexagésimo dia após a expedição de tal ordem ou nomeação, conforme for o caso e que tal ordem tenha seus efeitos cessados;

(e) qualquer autorização governamental necessária para o cumprimento de todas ou qualquer uma das obrigações assumidas pelo Devedor, neste Contrato de Mútuo, for revogada ou deixar de permanecer válida e vigente.

(f) qualquer autoridade governamental ou Tribunal empreendam qualquer ação que, na opinião razoável do Banco, gere um efeito materialmente adverso na situação financeira do Devedor, ou na sua capacidade de cumprir quaisquer de suas obrigações assumidas neste Contrato, dependendo do caso e esta ação não seja cancelada até o trigésimo dia posterior da sua entrada em vigor;

(g) O Devedor venda ou disponha de todos ou de uma parte substancial dos seus ativos; ou deixe de conduzir todo ou uma parte substancial do seu negócio como ele vinha sendo conduzido; ou faça uma fusão ou se associe com qualquer outra companhia sem o prévio consentimento escrito do Banco, a menos que a entidade que sobreviver à fusão ou consolidação seja o próprio Devedor.

9.2 Se algum "Evento de Inadimplência" ocorrer e continuar vigente, o Banco poderá, via aviso ao Devedor, (i) declarar terminadas, desde este momento, as obrigações do Banco sob o presente instrumento, independente da data que tais obrigações terminarão e (ii) declarar todos os valores a serem pagos pelo Devedor imediatamente vencidos e exigíveis.

9.3 Os direitos estipulados neste Contrato são cumulativos e eles não excluem nenhum outro direito, poderes ou outros privilégios previstos em Lei.

**CLÁUSULA 10 – DECLARAÇÕES**

10.1 O Devedor, pelo presente, declara e atesta para o Banco que:

5

Lender:

(a) It is a company duly organized and validly existing in the jurisdiction of its incorporation and has the power and authority to own its property, to conduct its business as currently conducted and to perform all the obligations arising hereunder.

(b) Borrower has taken all necessary actions, including but not limited those eventually required by Borrower's by-law, memorandum and/or articles of association and/or incorporation, association agreement or other similar organizational instrument, as applicable, to authorize the execution and validity of this Loan Agreement, as well as all other documents to be executed and delivered in connection with this Loan Agreement, including the Promissory Note, and all steps required for the full compliance with, and performance of the obligations resulting from this Loan Agreement;

(c) this Loan Agreement when executed and delivered shall constitute legal, valid and binding obligation of Borrower enforceable in accordance with its terms, subject, however, as to enforceability, to any insolvency and similar laws of general application;

(d) the execution, delivery and performance by Borrower of this Loan Agreement and the Promissory Note do not and will not violate any law, rule or regulation nor any undertakings to which Borrower is subject.

(e) no default or event of default under any agreement or instrument evidencing any indebtedness of Borrower has occurred and/or is continuing and no such event will occur upon the making of the Loan;

(f) no consent or approval of any creditor of Borrower is required by the terms of any agreement or instrument evidencing any indebtedness of Borrower for the execution and delivery of, or the performance of the obligations of Borrower under this Loan Agreement, and such execution, delivery performance or consummation will not result in any breach or violation of, or constitute a default under, the organizational documents of Borrower, any agreement or instrument to which Borrower is a party, or any judgment, order, statute, rule or regulation applicable to Borrower or to any of its property; and

(g) there are no actions, proceedings or claims pending or, to the knowledge of the Borrower, threatening, the adverse determination of which might have a materially adverse effect on the financial condition of Borrower or impair its ability to perform the obligations hereunder, or affect the validity or enforceability of this Loan Agreement or of any of the obligations resulting there from.

a) é uma empresa devidamente constituída sob as leis e jurisdição de sua sede, tem plenos poderes e autoridade para possuir suas propriedades, conduzir seus negócios como os vem conduzindo e a desempenhar e cumprir todos os compromissos aqui assumidos;

b) O Devedor empreendeu todas as ações necessárias, inclusive, mas não limitadas às requeridas pelo contrato social, contratos de constituição e/ou artigos de associação e/ou incorporação, acordos de associação ou outro instrumento organizacional similar, para autorizar a assinatura, execução e a validade deste Instrumento, bem como com todos os outros documentos a serem assinados, processados e entregues com relação a este Contrato, inclusive a Nota Promissória, com todos os passos necessários para o total cumprimento e realização das obrigações que resultarem deste instrumento;

c) Este Contrato de Mútuo quando assinado e entregue constituirão uma obrigação legal, válida do Devedor, obrigatória conforme os seus próprios termos, e sujeita, contudo, quanto à aplicabilidade a qualquer Lei de insolvência e/ou as leis semelhantes de aplicação geral;

d) a assinatura, execução, a entrega e a realização deste Contrato e da Nota Promissória, pelo Devedor, não viola e não violará qualquer Lei, norma ou regulamentação, nem qualquer compromisso ao qual o Devedor esteja sujeito,

e) nenhuma Inadimplência ou "Evento de Inadimplência" referente a qualquer Contrato ou instrumento que evidencie qualquer obrigação do Devedor ocorreu e/ou está ocorrendo e nenhum tal evento ocorrerá com a realização deste Empréstimo;

f) nenhum consentimento ou aprovação de qualquer credor do Devedor é necessário sob os termos de qualquer contrato ou instrumento em que o Devedor seja mutuário para a assinatura, execução, a entrega ou o desempenho das obrigações assumidas por ele neste Contrato e tal assinatura, execução, a entrega ou a consumação deste Instrumento não resultarão em nenhuma violação ou constituirão um evento de Inadimplência sob o Contrato Social do Devedor, qualquer contrato ou instrumento no qual o Devedor seja parte, ou qualquer juízo, ordem, estatuto, norma ou regulamentação aplicável ao Devedor ou a alguma de suas propriedades; e

g) não há nenhuma ação, processo ou reclamações pendentes ou, que seja do conhecimento do Devedor, ameace ou cujo resultado possa ter um efeito materialmente adverso na situação financeira do Devedor, ou que possa prejudicar a sua capacidade de executar e cumprir as obrigações contraídas sob o presente, ou afetar a validade ou a aplicabilidade deste Contrato de Mútuo ou qualquer uma das obrigações

6

| | |
|---|---|
| **SECTION 11 – COVENANTS** | **CLÁUSULA 11 - ESTIPULAÇÕES** |

**SECTION 11 – COVENANTS**

11.1 <u>Notices of Default</u>. Borrower shall promptly give notice to the Lender of each and any default or event of default and each other event that has or might have a materially adverse effect on its ability to perform its obligations under this Loan Agreement.

**SECTION 12 – INDEMNIFICATION**

12.1 <u>Initial expenses</u>. Borrower shall reimburse Lender on demand for all reasonable expenses incurred in connection with the negotiation, preparation and execution of this Loan Agreement. Reimbursable expenses shall include, without being limited to, the fees and expenses of legal counsel to Lender.

12.2 <u>Amendment and enforcement expenses</u>. Borrower shall reimburse Lender on demand, for all reasonable expenses, including without limitation, fees and expenses of counsel, incurred as a consequence of, or in connection with, (i) the negotiation, preparation or execution of any amendment to this Loan Agreement, (ii) any Default or Event of default, or (iii) the preservation or enforcement of any right of Lender under this Loan Agreement.

12.3 <u>Other expenses</u>. If Borrower fails to pay any amount payable hereunder or to otherwise fulfill any obligation created in or in connection with this Loan Agreement, as and when due, Borrower shall reimburse Lender for all reasonable losses or expenses incurred as a consequence thereof.

**SECTION 13 – NOTICES**

13.1 All notices hereunder shall be sent in writing and forwarded by letter, or fax with confirmation copy by mail, and addressed to:

For Lender:  Rural International Bank Ltd.
Caves Village, Unit 7
West Bay Street
Nassau – Bahamas
Fax number +1 242 327 4178

For Borrower:  Key Financial Investment Group LLC
445 Grand Bay Drive - Apt.401
Key Biscayne, FL 33149, USA

**SECTION 14 – GOVERNING LAW AND JURISDICTION**

14.1 This Loan Agreement and the rights and obligations of the Parties hereunder and under the Promissory Note shall be governed by and construed and interpreted in accordance with the laws of the Commonwealth of The Bahamas in all aspects related to the validity and enforcement of this Loan

---

oriundas do mesmo Contrato.

**CLÁUSULA 11 - ESTIPULAÇÕES**

11.1 <u>Comunicações de Inadimplência</u>. O Devedor dará imediato aviso ao Banco de cada uma e qualquer ocorrência de Inadimplência e qualquer outro evento que tenha ou possa ter um efeito materialmente adverso em sua capacidade de desempenhar suas obrigações assumidas neste Contrato.

**CLÁUSULA 12 - RESSARCIMENTO**

12.1 <u>Despesas Iniciais</u>. A pedido do Banco o Devedor o reembolsará de todas as despesas razoáveis incorridas com relação à negociação, preparação e execução deste Contrato. As despesas reembolsáveis incluirão, além de outras, os honorários e as despesas geradas pela consultoria legal pagas pelo Banco.

12.2 <u>Despesas por Emenda e de Execução</u>. A pedido do Banco o Devedor o reembolsará de todas as despesas razoáveis incluindo, sem restrições, taxas e despesas de consultoria geradas como consequência ou com relação a, (i) negociação, preparação ou execução de qualquer emenda a este Contrato de Mútuo, (ii) qualquer Inadimplência ou "Evento de Inadimplência", ou (iii) a preservação ou execução de qualquer direito do Banco sob o presente Contrato.

12.3 <u>Outras Despesas</u>. Se o Devedor deixar de pagar qualquer quantia devida sob o presente contrato ou que, sob qualquer aspecto, ficar sujeita a qualquer obrigação com relação a este Contrato de Mútuo, como e quando devido, o Devedor reembolsará o Banco de todas as perdas razoáveis ou despesas incorridas em consequência de tal evento.

**CLÁUSULA 13 - AVISOS**

13.1 Todos os avisos referentes a este Contrato serão enviados por escrito e expedidos por carta, ou fax com a cópia de confirmação pelo correio, e dirigidos a:

Para o Banco:  Rural International Bank Ltd.
Caves Village, Unit 7
West Bay Street
Nassau – Bahamas
Fax nº +1 242 327 4178

Para o Devedor: Key Financial Investment Group LLC
445 Grand Bay Drive - Apt.401
Key Biscayne, FL 33149, USA

**CLÁUSULA 14 – FORO**

14.1 Este Contrato e os direitos e obrigações das Partes sob o presente e sob a Nota Promissória estarão sujeitos e serão interpretados de acordo com as leis das Ilhas Bahamas em todos os aspectos relativos à validade e obrigatoriedades sob o presente Contrato.

7

Agreement.

14.2 The parties irrevocably submit to the non-exclusive jurisdiction of the Courts of The Bahamas in respect of any dispute or conflict arising from the interpretation or performance of this Loan Agreement.

14.3 Notwithstanding subsection 14.2 above, any proceeding may be brought and enforced by Lender in any other Courts or any other jurisdiction where Borrower or any of its properties may be found, and Borrower irrevocably submits to the jurisdiction of each such court in respect of any such proceeding.

14.4 Borrower hereby waives all immunity, whether on the basis of sovereignty or otherwise, from jurisdiction, attachment (both before and after judgment) and execution to which it might otherwise be entitled, in any proceeding in the courts of any other country or jurisdiction, and will not raise or claim or cause to be pleaded any such immunity at or in respect of any proceeding.

## SECTION 15 – AMENDMENTS

15.1 No amendment or waiver of any provision hereof shall in any event be effective unless the same shall be in writing and signed by Lender and Borrower, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

## SECTION 16 – NO WAIVER

16.1 No failure on the part of the Lender to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right preclude any other or further exercise thereof or the exercise of any other right.

## SECTION 17 – COUNTERPARTS

17.1 This Loan Agreement may be executed by the Parties in any number of separate counterparts, each of which when so executed shall be deemed to be an original, and all of which shall together constitute one and the same agreement.

## SECTION 18 – SEVERABILITY

18.1 If any provision hereof is held to be contrary to, prohibited by, or deemed invalid under applicable laws or regulations, such provision shall be inapplicable and deemed omitted to the extent so contrary, prohibited or invalid, but the remainder hereof and thereof shall not be invalidated thereby and shall be given effect so far as possible.

## SECTION 19 – SUCCESSORS AND ASSIGNS

19.1 This Loan Agreement shall be binding upon and

14.2 As partes irrevogavelmente se submetem à jurisdição do foro da Comarca de Nassau, Bahamas, com relação a qualquer disputa ou conflito oriundo da interpretação ou desempenho deste Contrato.

14.3 Apesar da subsecção 14.2 acima, o Banco poderá iniciar qualquer processo em qualquer outro Tribunal ou em qualquer outra jurisdição onde o Devedor ou alguma das suas propriedades possam estar, e o Devedor irrevogavelmente submete-se à jurisdição do Tribunal de tal localidade com relação a tal processo específico.

14.4 O Devedor, pelo presente, abdica de toda e qualquer imunidade, tanto com relação à soberania ou quanto à jurisdição (tanto antes como depois do ajuizamento) e execução, à qual ele poderia ter direito de alguma forma, em qualquer processo nos tribunais de qualquer outro país ou jurisdição, e não reclamará tal imunidade ou proporcionará que tal imunidade seja requerida com relação a qualquer processo.

## CLÁUSULA 15 - EMENDAS

15.1 Nenhuma emenda ou a renúncia de qualquer estipulação sob qualquer aspecto sob o presente contrato tornar-se-á efetiva a menos que a mesma seja por escrito e assinada tanto pelo Banco como pelo Devedor, e tal renúncia ou o consentimento tornar-se-á efetivo somente na situação específica e para o fim específico para o qual foi dado.

## CLÁUSULA 16 – RENÚNCIA DOS DIREITOS

16.1 O fato do Banco deixar de usar ou exercer um direito ou a demora em utilizar qualquer direito sob o presente instrumento não significará uma renúncia a qualquer desses direitos e o uso de um só direito ou a utilização parcial de qualquer direito não impedirá o uso futuro de qualquer outro direito.

## CLÁUSULA 17 - CONTRAPARTES

17.1 Este Contrato de Mútuo poderá ser assinado pelas Partes em qualquer número de vias distintas, e cada via, após assinada, será considerada como um original e todas juntas constituirão um só contrato.

## CLÁUSULA 18 – APLICABILIDADE

18.1 Se alguma cláusula do presente instrumento for contrária a, ou proibida por, ou considerada inválida sob as Leis ou regulamentos aplicáveis, tal cláusula será considerada inaplicável e omissa na extensão em que ela for contrária, proibida ou inválida, porém o restante do presente e da mesma não será invalidado e manterá os seus efeitos na devida extensão.

## CLÁUSULA 19 – SUCESSORES E CESSIONÁRIOS

19.1 Este Contrato de Mútuo manter-se-á vigente para o

8

inure to the benefit of the Lender and the Borrower and their respective successors or assigns.

### SECTION 20 – ASSIGNMENT BY LENDER

20.1 Once the Loan is fully disbursed to Borrower, Lender can only assign all, but not part, of its credits, rights and obligations hereunder to any third parties, with previous notice to Borrower, provided however that the assignment referred to in this subsection shall only be effective with regard to Borrower after Borrower receives written notice thereof from Lender, or from the relevant assignee together with a written instrument duly executed by the legal representative of Lender clearly confirming the assignment and identifying the relevant assignee.

### SECTION 21 – GUARANTEE

21.1 The Borrower undertakes the responsibility to give to the Lender, in guarantee of this loan, securities, bonds or receivables of its own property or of third parties' property, which may be in custody by the Lender or by any other custodian and the Lender is hereby authorized to dispose of such securities at its own discretion in order to settle any amount under this agreement which remains unpaid either of principal, interest or any other charge.

**In witness whereof**, the Parties hereto have caused this Loan Agreement to be executed as of the day and year first written above in two counterparts of equal tenor.

### CLAUSULA 20 – CESSÃO DE CRÉDITOS

20.1 Após o Empréstimo ser totalmente desembolsado ao Devedor, o Banco, poderá ceder, não parte, mas somente todo o seu crédito, direitos e obrigações aqui contraídas, a quaisquer terceiros, mediante simples aviso prévio por escrito ao Devedor, contanto que a cessão mencionada nesta subseção só se tornará efetiva para o Devedor, após o Devedor receber comunicação por escrito do Banco ou do Cessionário, junto com um instrumento por escrito devidamente assinado pelo representante legal do Banco confirmando claramente esta cessão e identificando o Cessionário.

### CLAUSULA 21 – GARANTIA

21.1 O Devedor se compromete a dar ao Banco, como garantia do empréstimo ora concedido, títulos ou recebíveis de sua propriedade ou de terceiros, que poderão estar custodiados junto ao próprio Banco ou em poder de outro custodiante, ficando o Banco autorizado, pelo presente, lançar mão dos mesmos, de qualquer forma, para saldar qualquer débito oriundo do presente contrato que permanecer impago, seja de principal, juros ou qualquer outro encargo.

**E, por estarem assim, justas e contratadas**, as Partes envolvidas neste Contrato de Mútuo assinam o presente instrumento no dia e ano acima mencionados, em duas vias de igual teor.

BORROWER  
DEVEDOR        : _____  
                     KEY FINANCIAL INVESTMENT GROUP LLC

LENDER  
BANCO          : _____  
                     RURAL INTERNATIONAL BANK LIMITED

9

# APPENDIX N° 1

## Amortization Schedule

| Payment Date | Principal | Interest |
|---|---|---|
| June 12th, 2014 | USD5,343,483.49 | USD427,478.68 |

**PROMISSORY NOTE**

Place of Issue : **Nassau, Bahamas**               Date of Issue : **June 17th, 2013**

For value received we, **KEY FINANCIAL INVESTMENT GROUP LLC**, ("the Issuer") domiciled at 445 Grand Bay Drive Apt. 401, Key Biscayne, FL 33149, USA, hereby irrevocably and unconditionally promise to pay to **RURAL INTERNATIONAL BANK LIMITED** or to order on **June 12th, 2014** ("the maturity date") the sum of effective US$5,343,483.49 (Five million, three hundred forty three thousand, four hundred eighty three U.S. dollars and forty nine cents) with accrued interest at the rate of **8%a.a.** according to the **Loan Agreement** number **CO0040613** signed on this date.

Effective payment to be made in United States of America dollars without set-off or counterclaim and shall be free and clear of and without deduction or withholding for any tax, impost, and/or levies present or future of any nature. If the issuer is required by law to deduct or withhold any tax, levy, duties or impost from or in respect of the sum payable hereunder, the sum payable shall be increased as necessary so that after making all required deductions and withholdings, the Bank or the Holder of this Promissory Note receives an amount equal to the sum it would have received had no such deductions or withholdings been made.

We confirm that all necessary governmental consents and approvals have been obtained and have been and will be complied with and are and will be in full force and effect for the valid issuance of this Promissory Note to enable payment to be made to the Bank or Order on the due date.

In the event this Promissory Note remains unpaid on the Maturity Date, the Issuer agrees to pay all costs of collection, including attorney's fees as well as default interest shall be paid from the Due Date to the date good funds are received by the Bank or Holder at the applicable six month LIBOR rate, as fixed at 11:00 a.m. London time, on the Due Date plus 4,5 % per annum. Interest shall be computed on the basis of actual days elapsed over a year consisting of 360 days.

This Promissory Note constitutes a direct, unconditional and unsecured obligation of the issuer ranking at least pari passu with all other unsecured and un-subordinated similar obligations of the Issuer resulting from any borrowings or guarantees.

The Issuer waives diligence, presentment, demand, protest notice or non-payment notice, dishonour and any other notice whatsoever with respect to this Promissory Note.

This Promissory Note shall be governed by and construed in accordance with the laws of Nassau, Commonwealth of The Bahamas, without regard to the conflicts provisions thereof. The Borrower irrevocably submits to the non-exclusive jurisdiction of the Courts of Nassau, Bahamas, in any action to enforce the provisions of this Promissory Note and waives the defence of an inconvenient forum. The Borrower waives the right to trial by jury. The Borrower waives any claim of immunity from attachment prior to judgement as well as any immunity from attachment in aid of execution upon a judgement.

For and on behalf of

**KEY FINANCIAL INVESTMENT GROUP LLC**

*[signature]*

The Manager