UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-22280-Civ-COOKE/TORRES

RURAL INTERNATIONAL BANK
LIMITED, (In Liquidation), a
corporation organized under the laws
of the Commonwealth of the
Bahamas,

    Plaintiff,

vs.

KEY FINANCIAL INVESTMENT GROUP
LLC, a dissolved Florida limited liability
company, MONIQUE MERRIAM, an
individual, GEOFINANCE LIMITED, a
Delaware corporation and BRUNO JUNQUEIRA,
an individual,

    Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART
## DEFENDANT MERRIAM'S MOTION TO DISMISS

THIS MATTER is before me on Defendant Monique Merriam's ("Merriam") Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Motion") (ECF No. 64). Plaintiff, Rural International Bank Limited ("RIBL"), filed its Response to Merriam's Motion (ECF No. 81) on July 3, 2017, to which Merriam filed her Reply in Support of Her Motion (ECF No. 82) on July 6, 2017, along with over one hundred pages of exhibits. RIBL then filed an unopposed Motion for Leave to File Surreply (ECF No. 84) to address the new factual allegations raised in Merriam's reply, recognizing the need for the Court to address fully the matter of subject matter jurisdiction. I granted RIBL leave to file its sur-reply (ECF No. 88), which it filed on July 18, 2017 (ECF No. 92). The matter is now fully briefed and ripe for adjudication. For the reasons explained below, Defendant's Motion to Dismiss is granted in part and denied in part.

1

## I. BACKGROUND

This case arises out of loans made by RIBL, a Bahamian corporation currently in liquidation, to Defendant Key Financial Investment Group, LLC, ("Key Financial"), a dissolved, single-member limited liability company based out of Florida. Compl., ¶¶ 2–4, 10–23. RIBL alleges that Key Financial failed to pay the loans when they became due, and that all of Key Financial's pledged collateral was worthless. *Id.* at ¶¶ 23–24. On the date of the last loan transaction, the sole member and manager of Key Financial[1] sold his entire ownership interest in Key Financial to Defendant Geofinance, a Delaware corporation. *Id.* at ¶¶ 5, 25. Merriam was the sole shareholder and director of Geofinance, and became the manager of Key Financial upon the former manager selling his interest. *Id.* at ¶¶ 27–28. While still owing approximately $13,700,000 in principal to RIBL on the aforementioned loans, Key Financial filed articles of dissolution. *Id.* at ¶ 30. RIBL asserts numerous counts against Key Financial, Geofinance, and Merriam, including breach of contract, fraud, failure to comply with Florida statutes when dissolving a limited liability corporation, alter ego claims, and conspiracy to defraud. *See id.* at ¶¶ 38–132.

In Merriam's Motion, she challenges RIBL's assertion in its Complaint that she is a resident of Washington, D.C.; she contends she is domiciled in Brazil and is a "stateless" United States citizen for diversity purposes, and therefore not diverse from RIBL. There is no dispute that Merriam has not resided in Washington, D.C. since 1997; however, she and her husband, a Brazilian citizen and diplomat, still maintain a property there, which they have rented out since 2001. *See* Merriam's Suppl. Decl., ECF No. 82-1, ¶¶ 31–32. They do not claim any homestead exemption for this property. *Id.*, ¶ 31. In January 2000, Merriam's husband "abandoned" his lawful permanent resident status in the United States. Ex. E, ECF No. 82-1. In January 2008, she and her husband purchased a house in Brazil, which is registered in Brazil as their residence and domicile. Ex. D, ECF No. 82-5. Merriam became a naturalized Brazilian citizen on May 27, 2011. Ex. B, ECF No. 82-3. She is not currently registered to vote in Washington, D.C., *see* Ex. G, ECF No. 82-8, but is registered to vote in Brazil, *see* Ex. F, ECF No. 82-7. In her Internal Revenue Service ("IRS") tax filings for the

---

[1] The sole member and manager of Key Financial was Defendant Bruno Junqueira ("Junqueira"). Junqueira was voluntarily dismissed by RIBL from this action on June 26, 2017. *See* ECF Nos. 76, 80.

past few years, she stated she did not maintain a home in the U.S. while living abroad, that her residence is in Brazil, and that she has not submitted a statement to the Brazilian authorities, where she claims bona fide residence, that she is not a resident of that country. Ex. 1I, ECF No. 82-10. She also lists a Maryland address and an Algerian address for her employer. *Id.* However, on one RIBL corporate account document for Geofinance, Merriam listed her address as Warren Place in Washington, D.C. In a separate RIBL corporate account document for Key Financial, Merriam put down an address in Brasilia, Brazil.

Merriam argues that because she is a "stateless" citizen, her presence in this case destroys complete diversity and therefore the entire case should be dismissed, as she is an indispensible party. RIBL, on the other hand, contends that Merriam's domicile was, and remains, Washington, D.C., satisfying the requirements for diversity jurisdiction. Should diversity not be satisfied, RIBL argues that Merriam is not a necessary party and the case can remain alive with the remaining two Defendants.

## II. LEGAL STANDARDS

As a court of limited jurisdiction, a federal district court must inquire into its subject matter jurisdiction. *See Kirkland v. Midland Mortg. Co.,* 243 F.3d 1277, 1279–80 (11th Cir. 2001). When diversity of citizenship is the basis for federal jurisdiction, diversity must exist at the time the complaint is filed. *Las Vistas Villas, S.A. v. Petersen*, 778 F. Supp. 1202, 1203 (M.D. Fla. 1991), *aff'd sub nom. Las Vistas Villas v. Petersen*, 13 F.3d 409 (11th Cir. 1994). "[T]he plaintiff must meet the requirements of the diversity statute for *each* defendant or face dismissal." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 829 (1989). At issue here is "alienage jurisdiction" concerning an action between citizens of a State and citizens or subjects of a foreign state. 28 U.S.C. § 1332(a)(2).[2] The plaintiff bears the burden of proving diversity jurisdiction by a preponderance of the evidence. *King v. Cessna Aircraft Co.*, 505 F.3d 1160, 1171 (11th Cir. 2007); *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330,

---

[2] In RIBL's Response to Merriam's Motion, it admits it incorrectly cited to 28 U.S.C. § 1332(a)(1) as the statutory basis for diversity jurisdiction. *See* ECF No. 81, p. 3; ECF No. 1, ¶ 8. However, defective allegations of jurisdiction may be amended pursuant to 28 U.S.C. § 1653, and this provision is to be read liberally. *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1342 n.12 (11th Cir. 2011). I find RIBL adequately alleged diversity jurisdiction on this record.

1340 (11th Cir. 2011). After citizenship is established, the next relevant inquiry is one of domicile. "[O]nce a plaintiff shows a former domicile, the burden shifts to the defendant to present evidence that the domicile changed." *King*, 505 F.3d at 1171 ( (internal quotations omitted). "For adults, domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Miss. Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 48 (1989). "U.S. citizens domiciled abroad are neither 'citizens of a State' under § 1332(a) nor 'citizens or subjects of a foreign state' and therefore are not proper parties to a diversity action in federal court." *Molinos*, 633 F.3d at 1341 (citing *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826 828–29 (1989)).

### III. ANALYSIS

As a dual-citizen of the U.S. and Brazil, there is no question that Merriam is a U.S. citizen for diversity jurisdiction purposes. *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1341 (11th Cir. 2011) ("[A]n individual who is a dual citizen of the United States and another nation is only a citizen of the United States for the purposes of diversity jurisdiction under § 1332(a)."). The main issue, then, is the question of Merriam's domicile. Plaintiff has properly alleged that Merriam's former domicile was Washington, D.C. The burden then shifts to Merriam to show that her domicile has changed. *King*, 505 F.3d at 1171. One way to satisfy the burden of showing her domicile changed is by showing that she resided elsewhere at the time the complaint was filed. *See id.* As stated above, it is undisputed that Merriam has not resided in Washington, D.C. since 1997. Merriam and her husband currently reside in Algeria, where her husband is assigned to the Brazilian Embassy. They have been there since 2013.

If a defendant shows she resided elsewhere when the complaint was filed, "the plaintiff must come forward with evidence showing that the relocation was for some particular purpose, expected to be only of a temporary nature, or in the exercise of some particular profession, office, or calling." *King v. Cessna Aircraft Co.*, 505 F.3d 1160, 1171 (11th Cir. 2007) (internal quotations omitted). RIBL argues that Washington, D.C. continues to be Merriam's domicile for several reasons: her different residences since leaving Washington, D.C. have been transitory in nature because her husband is a diplomat, she still maintains a house in Washington, D.C., and she used the address of that house on an RIBL account document for Geofinance.

4

Both Parties cite to three cases to support their contentions as to Merriam's domicile, *King*, *Molinos*, and *Las Vistas Villas*. In *King*, the issue of diversity arose between a deceased plaintiff, Jessica King (represented by a personal representative of her estate), and a foreign aircraft company. The aircraft company attempted to argue that because King, a U.S. citizen, was living in Denmark at the time of her death, Denmark was her domicile and she was therefore a "stateless" citizen, which destroyed diversity jurisdiction. However, the court found that King's domicile was California. Although she had not resided in California for eleven years prior to her death, King visited California regularly, her parents testified that she planned to return to California after her tenure abroad, and her various residences in foreign countries over the years were all in pursuit of her career goals. *King*, 505 F.3d at 1172. In *Las Vistas Villas*, the defendant was a third year law student in Minnesota who had dual citizenship in the U.S. and Costa Rica. Although he had voted in a U.S. presidential election and registered with the U.S. Selective Service, the Costa-Rican born defendant returned to Costa Rica for five years in between college and law school, he owned property in Costa Rica but not the U.S., and he demonstrated no intent to remain in the U.S. after law school. *Las Vistas Villas*, 778 F.Supp. at 1204–05. The court found that his domicile was in Costa Rica. *Id.* at 1205. Lastly, in *Molinos*, the issue of diversity had to do with the domicile of a dual-citizen of the U.S. and the Dominican Republic. The defendant lived in Florida at the time the lawsuit was filed, he had moved to Florida a few years prior to the lawsuit after retiring, and he stated in his deposition testimony that he considered himself a "permanent resident" of Florida. *Molinos*, 633 F.3d at 1342–43. With nothing more than his word to contradict the evidence, the court found that he was indeed domiciled in Florida. *Id.* at 1343.

The instant case presents facts just different enough to distinguish the above cases. Here, Merriam has not lived in the U.S. for twenty years, almost double the eleven years discussed in *King*. Additionally, she owns property with her husband in both Brazil and the U.S., unlike any of the cases cited above. The U.S. property is rented and Merriam does not claim a homestead tax exemption on it. Additionally, the property she and her husband own in Brazil was purchased *after* she left Washington, D.C., and while she was living in Brazil for a six-year period. The property is registered in Brazil as her residence. Merriam's different residences outside of the U.S. may be transitory in nature, but they are due to her

husband's job as a *Brazilian* diplomat, not a U.S. diplomat, and do not indicate an intent to return to the U.S. once his postings are concluded. Further, during the time since Merriam has lived in the U.S., she lived in Brazil for almost six years, acquired Brazilian citizenship,[3] and her husband has abandoned his legal permanent resident status in the U.S. She no longer votes in Washington, D.C., but does vote in Brazil. While Geofinance, an American corporation, is her employer, she works remotely in Algeria. Merriam's statements of her intent to return to Brazil when her husband retires may be self-serving; however, they are supported by a preponderance of the evidence. All of these facts taken together confirm a change in domicile to Brazil. The fact that Merriam listed a Washington, D.C. residential address—at which she has not lived for twenty years—on one form with RIBL is not enough to overcome the rest of the evidence. Merriam is a "stateless" U.S. citizen, destroying complete diversity jurisdiction.

The question then becomes whether to dismiss the entire case or simply dismiss Merriam. "By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered." *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) (quoting *Newman-Green*, 490 U.S. at 832).[4] Merriam concedes that if she is dismissed, diversity jurisdiction is satisfied. However, she argues that she is an indispensible party and that she and Geofinance have common defenses. Upon further examination of her arguments, it is clear that the counts to which Merriam claims she is essential are the counts directed solely at her; the counts asserted against Geofinance and Key Financial are contractual in nature and arise out of loan documents to which Merriam herself is not a

---

[3] RIBL argues that Merriam's Brazilian citizenship is not relevant at all for diversity purposes; however, RIBL goes slightly too far. It is well settled that "an individual who is a dual citizen of the United States and another nation is only a citizen of the United States for the purposes of diversity jurisdiction under § 1332(a)." *Molinos*, 633 F.3d at 1341. But citizenship is only the first prong of the test; domicile must also be considered. Obtaining citizenship in another nation does not negate a party's U.S. citizenship; however, it could, and in this case does, show the intent of a party to change domicile.

[4] Both Merriam's Motion and her reply misstate the holding in *Newman-Green*, stating that it requires district courts to exercise its power to dismiss "jurisdictional spoilers" sparingly. As correctly pointed out by RIBL, the Supreme Court's caution about dismissing "jurisdictional spoilers" was specifically directed at appellate courts. *Newman-Green, Inc.*, 490 U.S. at 837.

party. Additionally, even if she has common defenses with Geofinance, she does not explain how Geofinance is prohibited from asserting these defenses without Merriam as a co-defendant. Merriam makes one last attempt to have the entire lawsuit thrown out by cautioning against possible inconsistent results arising out of different proceedings. This concern is not valid, however, because again, the claims against Merriam and the claims against the corporate entities are wholly different, thus negating any worry about inconsistent results. Merriam is a nondiverse, dispensable party and is dismissed from the case.

## IV. Conclusion

For the reasons explained above, Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 64) is **GRANTED in part and DENIED in part**. All claims against Defendant Monique Merriam are **DISMISSED** *without prejudice*. The Clerk is directed to **TERMINATE** Defendant Monique Merriam from the case.

**DONE and ORDERED** in Chambers, Miami, Florida, this 7th day of August 2017.

*/s/ Marcia G. Cooke*
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of record*